UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                     :

GREGORY DWAYNE BROWN,          :

                               :           12 Civ. 734 (PAE)

                     Plaintiff,        :

                               :        OPINION & ORDER

                  -v-               :

                               :

DOCTOR MULLEN ORAL SURGEON, et al.,  :

                               :

                 Defendants.     :

                               :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Gregory Dwayne Brown, proceeding *pro se*, brings this Complaint pursuant to

42 U.S.C. § 1983 against defendants he identifies as Doctor Mullen Oral Surgeon ("Dr.

Mullins"),[1] Dental Hygienist Jane Doe ("Raymond"),[2] Physical Health Services (PHS)

("Corizon"),[3] and the City of New York, alleging violations of the Eighth Amendment.

Defendants move to dismiss the Complaint for failure to state a claim, or, alternatively, for

summary judgment.  For the reasons stated, the Court grants summary judgment in defendants'

favor on Brown's Eighth Amendment claim and dismisses Brown's state law claims without

prejudice.

---

[1] The proper defendant is Dr. John Mullins, DMD.  Brown has not served Dr. Mullins with the
Summons and Complaint.

[2] Defense counsel represents that, pursuant to this Court's February 7, 2012 Order, *see* Dkt. 7,
defendants informed plaintiff that Jane Doe was dental hygienist Abigail Raymond.  Brown has
not served Raymond with the Summons and Complaint, nor has Brown amended his Complaint
to name Raymond, as directed in the February 7 Order.

[3] Defense counsel represents that the defendant sued as PHS is actually named Corizon Health,
Inc.  Corizon is the contractor that provides healthcare services at Rikers Island.

I.      **Background**[4]

    **A.  Factual Background**

On December 19, 2011, Brown underwent oral surgery at Rikers Island, where he was incarcerated.  The surgery, which entailed extracting a tooth, was performed by Dr. Mullins. Brown alleges that Dr. Mullins "committed grave negligence" when he "injected 4 shots into my gum and then pried a tool into my gum, he wiggled this small sharp tool with the heel of his palm to open my gum and his tool slipped."  Brown alleges that Dr. Mullins had a female dental assistant, presumably Raymond, with him, and that she "witnessed [Dr. Mullins] cut my jawline completely open and did not say anything."

Brown's alleged injuries include "a long tear along my jawline, also a huge chunk of my gum was cut out and a piece of sharp tooth was left inside which has caused discoloration, swelling, and lots of pain."  Brown also feared that "an infection can be fatal by soon spreading to my brain making me combative and delirious."  These injuries caused Brown "sleepless nights, [] swelling that has not subsided . . . , and not being able to eat well."  Brown alleges that "medical staff refused to heed my complaints of pain due to this procedure" and that "medical staff are refusing my cries for help, I was told I need to be bleeding."

Brown's medical records provide valuable context for these allegations.  On October 7, 2011, Brown first visited the Rikers Island dentist.  Dr. Molfetas, who is not a party here, observed at the time that Brown had advanced tooth decay of tooth number 19 and referred Brown for an extraction of that tooth.  Thomas Decl. Ex. E at 64.  On December 19, 2011, Dr.

---

[4] The Court's account of the facts is drawn from the Complaint and from Brown's medical records, which were supplied by defendants in support of their motion for summary judgment. *See* Declaration of Gillian C. Thomas in Support of Defendants' Motion ("Thomas Decl."), Ex. E.  Brown has not disputed the authenticity of these records or the information contained therein, nor has he supplied any other records in opposition to defendants' motion.

Mullins performed the extraction described above.  *Id.* at 45.  Before doing so, Dr. Mullins informed Brown of the risks of the procedure, including the possibility that Brown could suffer a bone fracture.  Brown signed an Informed Consent form for the extraction.  *Id.* at 168–69.

Following the December 19 extraction, Brown made repeated trips to the Rikers Island health clinic.  On December 20, 2012, he visited the clinic complaining of a toothache related to the previous day's procedure.  Frantz Nicolas, PA, prescribed a 7-day course of Clindamycin and a 6-day course of Ibuprofen.  *Id.* at 43.  On January 13, 2012, Brown returned to the clinic complaining of a toothache.  Guillaine Aristide-Cenor, PA, examined Brown and observed that he had a "cracked chipped tooth left lower molar area," for which he referred Brown to a dentist.  Aristide-Cenor also noted that Brown "denied fever, chills, no bleeding gums, no swelling" and prescribed Peridex solution and more Ibuprofen.  *Id.* at 31–32.  On January 19 and 24, 2012, Brown again visited the clinic complaining of a toothache; each time his Ibuprofen prescription was renewed, with the treating PA noting that Brown had a pending dental appointment scheduled for January 27, 2012.[5]  *Id.* at 16, 23.

Before Brown could attend that appointment, however, he filed this Complaint.

**B.  Procedural History**

On January 25, 2012, Brown filed the Complaint in this case.  Dkt. 2.  On February 7, 2012, this Court dismissed the New York City Department of Corrections and construed Brown's Complaint as asserting claims against the City of New York.  Dkt. 7.

---

[5] At the January 27, 2012, appointment, Dr. Molfetas took an X-ray and diagnosed Brown with a bone spicule—a small sliver of bone left behind after a tooth extraction.  Thomas Decl. Ex. E at 11.  Dr. Molfetas offered to remove the bone spicule, but Brown declined and signed a refusal of treatment form.  *Id.* at 116.  However, because the appointment occurred two days after the filing of the Complaint, the Court does not consider Brown's refusal of treatment—which might otherwise detract from his claim—in evaluating Brown's Eighth Amendment claim.  *See generally Lewal v. Tippy*, 133 F.3d 907 (2d Cir. 1998) (summary order).

On October 22, 2012, defendants filed this motion.  Dkt. 26.  The same day, this Court issued an Order notifying Brown that he had until December 3, 2012, to oppose the motion, amend his Complaint, or request an extension of time.  Dkt. 30.  On December 12, 2012, having received no response and noting that Brown's address of record had already changed twice during the pendency of this litigation, *see* Dkt. 9, 12, the Court searched for Brown on the New York State inmate lookup system and discovered that someone by the same name had recently been taken into custody.  Accordingly, the *pro se* office of this Court sent a change of address form to that address.  No response was received.  On January 14, 2013, having received no opposition from Brown, the Court issued another Order, extending *sua sponte* Brown's time to respond to the motion until February 14, 2013.  Dkt. 31.  On February 11, 2013, the Court issued another Order giving Brown another extension and explicitly notifying him that the Court intended to treat defendants' motion as a motion for summary judgment.  Dkt. 32.  Brown submitted no response.

## II.  Conversion to Summary Judgment

Defendants seek to convert their motion to dismiss into one for summary judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  "The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss] into a motion for summary judgment is 'whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside

the pleadings.'" *Costor v. Sanders*, No. 07 Civ. 11311 (NRB), 2009 WL 1834374, at *2

(S.D.N.Y. June 16, 2009) (quoting *Krijn v. Pogue Simone Real Estate Co.*, 896 F.32d 687, 689

(2d Cir. 1990)).

"Ordinarily, formal notice is not required where a party 'should reasonably have

recognized the possibility that the motion might be converted into one for summary judgment

[and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts

outside the pleadings.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Villante

v. Dep't of Corr. of City of N.Y.*, 786 F.2d 516, 521 (2d Cir. 1986)).  However, where, as here,

the non-movant is proceeding *pro se*, "[n]otice is particularly important because the *pro se*

litigant may be unaware of the consequences of his failure to offer evidence bearing on triable

issues.  Accordingly, *pro se* parties must have unequivocal notice of the meaning and

consequences of conversion to summary judgment."  *Id.* at 307–08 (citation omitted).

Here, Brown has received unequivocal notice of the meaning and consequences of

conversion to summary judgment.  On October 22, 2012, defendants served Brown with notice,

pursuant to Local Civil Rule 12.1, that the Court might treat the motion as one for summary

judgment.  Dkt. 24.  On January 14, 2013, more than one month after Brown's opposition to the

motion was due, the Court issued an Order instructing Brown that if he failed to file any

opposition by February 14, 2013, "the motion shall be decided based on the record before the

Court."  Dkt. 31.  On February 11, 2013, having still received no opposition from Brown, the

Court issued another Order, granting Brown another extension, until February 28, 2013, to file an

opposition, and stating:  "Lest there be any confusion, Brown is hereby notified that the Court

intends to convert the motion to dismiss to one for summary judgment pursuant to Fed. R. Civ.

P. 56."  Dkt. 32.  Despite being repeatedly put on notice, Brown never filed any opposition to

defendants' motion.  Thus, conversion to summary judgment is appropriate here.  *See*

*Hernandez*, 582 F.3d at 308 n.2; *see also Collins v. Goord*, 438 F. Supp. 2d 399, 412 n.14

(S.D.N.Y. 2006); *Curry v. Mazzuca*, No. 05 Civ. 1542 (NRB), 2006 WL 250487, at *4–5

(S.D.N.Y. Feb. 2, 2006).

### III.    Applicable Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a

question of material fact.  In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  To survive a

summary judgment motion, the opposing party must establish a genuine issue of fact by "citing

to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*,

554 F.3d 255, 266 (2d Cir. 2009).  "A party may not rely on mere speculation or conjecture as to

the true nature of the facts to overcome a motion for summary judgment."  *Hicks v. Baines*, 593

F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the

outcome of the suit under the governing law" will preclude a grant of summary judgment.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether there are

genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all

permissible factual inferences in favor of the party against whom summary judgment is sought."

*Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137

(2d Cir. 2003)).

In considering defendants' motion, the Court is mindful that Brown is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted).  However, this forgiving standard "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

## IV.   Discussion

The Court construes Brown's Complaint to raise two claims:  an Eighth Amendment claim for deliberate indifference to serious medical need,[6] and a state law medical negligence claim.  The Court addresses each, in turn.

### A.  Eighth Amendment Claim

The Eighth Amendment protects prisoners from "cruel and unusual punishment" caused by prison officials.  U.S. Const. amend. VIII.  "To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'"  *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

To establish an Eighth Amendment violation arising out of inadequate access to medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'"  *Chance v.*

---

[6] Although Brown's Complaint does not identify whether he was a pre-trial or post-trial detainee at the time of the incident—and, therefore, whether the violation he claims is of the Fourteenth or Eighth Amendment—the Court infers that he was a pre-trial detainee because he was moved from Rikers Island to a New York State correctional facility sometime after the incident. However, this distinction does not affect the substantive analysis of Brown's claims because "[c]laims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."  *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009); *see also Santiago v. Pressley*, No. 10 Civ. 4797 (PAE), 2011 WL 6748386, at *2 n.3 (S.D.N.Y. Dec. 23, 2011).

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104).  This standard incorporates both objective and subjective elements:  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### 1.  Serious Medical Condition

"As to the objective element, there is no 'static test' to determine whether a deprivation is sufficiently serious."  *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012).  A serious medical need is generally characterized by "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citation omitted).  Courts in this Circuit have considered various factors in determining the existence of a serious medical condition, including: (1) the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; (3) "the existence of chronic and substantial pain"; and (4) "adverse medical effects or demonstrable physical injury."  *Chance*, 143 F.3d at 702; *Smith*, 316 F.3d at 187.

"Prisoners are not entitled to a 'perfect plan for dental care.'"  *Alster v. Goord*, 745 F. Supp. 2d 317, 333 (S.D.N.Y. 2010) (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986)).  However, the Second Circuit has held that "dental conditions (like other medical conditions) vary in severity and that a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case."  *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000).  "A cognizable claim regarding inadequate dental care . . . can

be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Chance*, 143 F.3d at 703 (citations omitted). "Any person who has spent a night tossing and turning in suffering from an abscessed tooth knows that dental pain can be excrutiatingly [sic] severe." *Id.* at 702.

Brown's Complaint alleges injuries such as "not being able to eat well" and "lots of pain" from "a huge chunk of my gum [being] cut out." These injuries derive from the December 19 procedure that left a partially extracted tooth remaining in his gum. Although such injuries might be sufficiently serious to state an Eighth Amendment violation under some circumstances, *see Chance*, 143 F.3d at 702–03, Brown's medical reports refute the Complaint's characterization of his injuries as severe. When Brown visited the clinic the day after his extraction, he complained solely of a "toothache." Thomas Decl. Ex. E at 43. When Brown returned to the clinic on January 13, 2012, he "denied fever, chills" and the PA observed "no bleeding gums, no swelling." *Id.* at 31. On January 19, 2012, Brown complained of "pain at the extraction site," but the treating PA observed "no [sign of] infection, no swelling." *Id.* at 23. On January 24, 2012, Brown again complained of a toothache, but the treating PA observed "no swelling." *Id.* at 16.

This is, thus, a far cry from the situation in *Chance*, where plaintiff, as described, "ha[d] been in 'great pain' for at least six months, [] ha[d] been unable to chew properly, [] ha[d] choked on his food, . . . [and] at least one and possibly three of his teeth ha[d] degenerated to the point of requiring extraction." *Chance*, 143 F.3d at 702. It is also less severe than the situation recited in *Harrison*, in which prison officials refused to treat a cavity in one tooth unless plaintiff consented to the extraction of another tooth. *See Harrison*, 219 F.3d at 134. Undeniably, Brown

suffered some discomfort because his tooth was partially, not fully, extracted.  But Brown's medical records establish that, during his repeated visits to the health clinic, he complained of a toothache alone, and did not complain of the more severe symptoms alleged in his Complaint. On this undisputed factual record, Brown has not raised a genuine issue of material fact that, if resolved in his favor, would permit the conclusion that he suffered a sufficiently serious medical condition.  *See Mendoza v. McGinnis*, No. 05-CV-1124 (TJM/DEP), 2008 WL 423960, at *10 (N.D.N.Y. Sept. 11, 2008) (broken tooth not sufficiently serious medical need where plaintiff has not alleged extreme pain or the likelihood that if left untreated it would result in degeneration); *Webley v. Hartmann*, No. 03-CV-0596 (LEK/DRH), 2005 WL 1520852, at *2–3 (N.D.N.Y. June 27, 2005) (claims of extreme tooth pain and difficulty eating not sufficiently serious where plaintiff was regularly examined by nurses and dentists, prescribed medicine for pain, and diagnosis was not considered urgent); *Hanton v. Marto*, No. 02CV997 (CFD), 2005 WL 465422, at *7 (D. Conn. Feb. 17, 2005) (Droney, J.) (granting defendants' motion for summary judgment where dental records show that plaintiff omitted several dental visits from his allegations, including patient's refusal of treatment).  *Cf. Bilal v. White*, 2012 WL 3734376, at *2 (2d Cir. Aug. 30, 2012) (slip op.) (affirming grant of summary judgment against plaintiff where "the only evidence that [plaintiff] suffered 'extreme pain' is his own allegation in the verified complaint" and plaintiff "failed to corroborate his allegation with any details, beyond the general diagnoses [of epilepsy and arthritis], of his medical history, the severity of his prior suffering, or the medications he has been prescribed").

### 2.  Deliberate Indifference

Because Brown fails to raise a genuine issue of fact as to the objective prong of the Eighth Amendment standard, the Court need not address the subjective prong.  However, even if

Brown had adequately raised such an issue, his claim would fail for the independent reason that he has failed to establish a genuine issue of fact as to whether "the charged official[s acted] with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

The deliberate indifference standard requires "more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). The required state of mind is "equivalent to criminal recklessness, [where] the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quoting *Farmer*, 511 U.S. at 837). "[A] prisoner must demonstrate more than 'an inadvertent failure to provide adequate medical care' by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184 (quoting *Estelle*, 429 U.S. at 105). Brown has failed to raise a genuine issue as to whether any defendant, or any health official at Rikers Island for that matter, acted with the requisite state of mind.

Brown alleges that Dr. Mullins committed "grave negligence" when he performed the extraction, but this does not constitute deliberate indifference. *See Farmer*, 511 U.S. at 835; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Moreover, far from deliberately disregarding an excessive risk to Brown's safety, on the basis of the medical records supplied by the defense, Dr. Mullins informed Brown of the routine risks of the extraction procedure and obtained Brown's informed consent to perform the procedure. Thomas Decl. Ex. E at 168–69. For the same reasons, Brown's claim also fails against Raymond, the dental hygienist who witnessed Dr. Mullins' alleged act of negligence.

Brown also alleges that the medical staff employed by Corizon who treated him on his subsequent visits to the clinic "refused to heed my complaints of pain" and "told [me] I need to

11

be bleeding." But Brown's medical records refute these assertions. Each time Brown visited the clinic, he was treated by the attending PA, prescribed Ibuprofen and other medications, and referred to the dentist for a follow-up. Thomas Decl. Ex. E at 16, 23, 31, 43. Although Brown may have preferred a different course of treatment, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

To the extent that Brown alleges that medical care was improperly delayed, the Court notes that Brown did not wait for his follow-up dentist appointment before filing his lawsuit. That appointment was scheduled for January 27, 2012, just over a month after the extraction procedure and within weeks or days of Brown's various follow-up complaints. This is not the sort of delay that constitutes deliberate indifference. *See, e.g.*, *Harrison*, 219 F.3d at 138 (one-year delay in treating a cavity can constitute deliberate indifference); *Alster v. Goord*, 745 F. Supp. 2d 317, 334 (S.D.N.Y. 2010) (no deliberate indifference because seven-month delay before denture surgery was reasonable); *Williams v. Scully*, 552 F. Supp. 431, 432 (S.D.N.Y. 1982) (factual issue as to whether delay of dental treatment for five and a half months constitutes deliberate indifference).

The Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Smith*, 316 F.3d at 184. "[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Id.* Here, Brown alleges neither facts sufficient to show that his toothache was a sufficiently serious medical condition, nor that any

prison official acted with deliberate indifference towards that condition.  Accordingly, summary judgment must be granted in favor of defendants on Brown's Eighth Amendment claim.[7]

### B.  State Law Claims

To the extent Brown's Complaint can be construed to allege a medical malpractice claim, the Court declines to exercise supplemental jurisdiction over that claim.  Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  As the Supreme Court stated in discussing Section 1367's predecessor judicial doctrine of pendent jurisdiction, this is traditionally "a doctrine of discretion, not of plaintiff's right."  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).  Where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts.  *See* 28 U.S.C. § 1367(c)(3); *Giordano v. City of N.Y.*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  Although defendants argue that any state law claims should be dismissed with prejudice, "no exceptional circumstances exist in this case for the Court to decide these state law claims, and interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain these matters of state law in this case."  *Nealy v. Berger*, No. 08-CV-1322 (JFB) (AKT), 2009 WL 704804, at *10 (E.D.N.Y. Mar. 16, 2009); *see also Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986).  Brown's state law claims are therefore dismissed without prejudice.  *See* 28 U.S.C. § 1367(d).

---

[7] Even if Brown could show that a prison official violated his Eighth Amendment rights, he has not raised an issue of fact as to whether such a violation was pursuant to a municipal "policy or custom."  *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).  Accordingly, summary judgment is merited in favor of the City of New York on this alternative basis.

## CONCLUSION

Defendants' motion to for summary judgment is granted. The Court certifies, pursuant to 28 U.S.C. § 1915(a) (3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to terminate the motion at docket number 26 and to close the case.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: March 4, 2013
New York, New York

14